May it please the court, my name is Mike Cratville-Long, my co-counsel. Todd Frazier, we represent the defendants in this case that have not been dismissed, which would be Sundown and Fletcher, Michele Francis, and Michael Hagan. We've obviously assigned as heirs the granting of the summary judgment to the plaintiff in this case, the denial of our cross-motion for summary judgment, several evidentiary errors. I really want to take the court through some of the facts, because I think if we unravel some of the facts and the time periods, then I think the law kind of follows the facts in that sense. We have the first time period, which is early 1984 through September 1984, where the parties consummated their deal. We had Michele Francis saying, as the lower court noted, that the corporation's going to own the screenplay, going to own the copyright. Mr. Kesey then prepares a document himself, so he's the preparer, everything's going to be construed against him, where he says, I am preparing the screenplay for Sundown and Fletcher. He signs that. My clients then signed documents to the effect of signing checks to Mr. Kesey, and then later they brought in another writer, Mr. Irby Smith, who also was given a check by us as well. Mr. Kesey prepared the first draft in early 1984, and he delivered the second and final draft in September of 1984, which is the same time that we wrote the second check to him and consummated the deal. And then your clients negotiated option agreements, right? So indicating that he was the author and the owner of the screenplay. No, that's incorrect, Your Honor. There were some subsequent discussions subsequent to September of 1984 where my clients were willing to, in a sense, offer him the copyrights in return for certain assistance in marketing. We've asked that those settlement negotiations be excluded under Rule 408. But then you have the period of time after September of 1984 when he delivered and was paid for that last draft where my client, Michelle Francis, was out marketing this with the assistance of Mr. Kesey. And in the presence of Mr. Kesey, Ms. Francis said numerous times, over 30, she said in her affidavit, the corporation owns this screenplay. Mr. Kesey, to his response, had no response. He never contradicted once, and the plaintiff never disagrees with our characterization of those facts. In fact, the lower court, in its order on page 73, I'm sorry, on page 49 of the evidentiary order, of the summary judgment order, indicated that there was evidence in the record that Kesey himself represented that Sundown and Francis owned the screenplay. So then he went and published the novel. So I don't know if it was your client or it was the Wilsons who were saying, Don't publish the novel. We think we have some rights to it. We'll talk to you about it. We'll negotiate with you. And Kesey, at that point, his attorney said, you know, whatever. Published the novel, and then there was no action taken, right? Actually, there was no action taken, obviously, by either side. Well, he published the novel, notwithstanding the... In 1993, that's true, he did publish the novel. In 1994, you have the flurry of lawyers' letters back and forth. And what's interesting about a couple of the letters, and I didn't even pick up on this until I was reading through this stuff this morning, Your Honors, that one of the issues about privity in this case that the lower courts seemed to focus in on was these lawyers' letters from their lawyer, Mr. Rose, back in 1984, copied Shannon Kesey and Fay Kesey. And so you have a perfect storm in a certain sense of everyone on the Kesey side knows that this is a fight. All the letters between the lawyers in 1994 talk about this is a work-for-hire, Sundown and Fletcher owns this, and basically the fight is on as of 1994. Don't my notes say that they offered to negotiate? It was let's discuss type of letters. And the Kesey entities, I guess, Mr. Kesey, just went ahead and published, didn't take up that offer. Is that incorrect? I think the timeline is slightly incorrect, Your Honor, because the novel is already published essentially by the time the lawyers' letters started to go back and forth between February of 1994 and May of 1994. But during those lawyers' letters that are in the record in that three-month time frame, all of the ownership issues with regard to the screenplay were teed up because you had Ms. Wilson saying, basically, I own rights to this screenplay essentially because of this option. It's a work-for-hire. Sundown and Fletcher commissioned Mr. Kesey to write it as a work-for-hire. So you've got this fight back in 1994 between the lawyers back and forth teeing it up, but neither side does anything. So what is, I take it, you're giving us these facts to help us understand your statute of limitations argument. Is that correct? I think it goes to the statute of limitations. I think it goes to the estoppel argument. I think it goes to the latches argument. Because you have these numerous representations by my client that Mr. Kesey never disagrees with. And those statements by my client and the failure to react by Mr. Kesey work on both defenses. So I was looking for, as I was going through the brief and through the record, and there's a complicated history and a complicated series of facts, but I was looking for the thing that would count as a plain and express repudiation that wasn't an offer for further negotiations because that's what our case law says. That's not a plain and express repudiation. What specific item outside of the statute of limitations period do you think is the best case that your clients made that plain and express repudiation? I think you could focus on several facts. You've got the 1984 discussions where my client says the corporation will own the screenplay. You've got the 1990 option that Mr. Kesey was aware of where we optioned it to Ms. Wilson who was out marketing the screenplay herself. He knew about that. I mean, because in the option itself it said that we were the owners of it. We were giving her the option to market it. 1994, you've got the lawyer's letters back and forth. You've got all the statements. Okay, so you can't point. You just see a series of transactions, but you're not pointing to any one specific letter or action that was a plain and express repudiation without any offer for further negotiations. Is there anything specific or is it more you want us to look at the whole series of transactions? I consider each one of those separate and distinct express repudiations. I mean, because when you have Michelle Francis saying the corporation is going to own it to Mr. Kesey privately when they're starting the deal to start with, I mean, that certainly says where they're at. You have the deal memo which talks about it, that we own it at that time and he knows about it. Again, that's express repudiation. You've got the statements within the 1994 letters back and forth that say we own it as a work for hire. And then you have the statements by Ms. Francis in front of Mr. Kesey. He doesn't contradict. So they're all express repudiations. Can I ask you about another issue? And this was most of your brief or a great deal of your brief you spent on discussing the errors that you allege the district court made in ruling on evidentiary issues. But what I didn't see in your brief was an argument as to how that would prejudice you because you didn't seem to be making the argument that if the evidence had come in, there would have been a genuine issue of material fact about the ownership or the transfer of the screenplay to your client. So how are those arguments waived? Are you making those arguments here? Maybe you could help me understand that. No, I didn't probably articulate it very well in the brief or you wouldn't have asked me that question. But clearly we are not waiving the argument. But there are certain things that were left out by the lower court that were prejudicial with regard to certain things that were in Ms. Wilson's deposition, which talked about the deal memo and Mr. Kesey's knowledge of it. Now, it's somewhere else in the record, too, so maybe it's harmless error as well. But, again, what I was trying to show was that the court had excluded several items and we just thought it should have been all part of the record, too, as additional evidence of the material fact that we were trying to get to, to begin with. But, again, when ---- And if we disagree with you as to those items, you lose? Oh, definitely not, Judge, because we're in the lucky situation, I think, Your Honor, of the evidence that's actually in the record. In fact, a lot of stuff that the lower court referred to ---- But you don't argue that in your brief. You only argue about the evidentiary items. No, no. If you win on those, then I say, well, okay, now we have to go back and reassess. But I don't see anything that says, well, even if we're wrong about those items, some judgment was improperly admitted or granted. Well, I mean, I specifically argued in there that ---- Do you have the brief? Pardon? Do you have the brief? Why don't you tell us where? The second argument, Your Honor, that starts on page 30, talks about the plain summary judgment motion should not have been granted. Right. And it deals with affirmative defenses. Correct. Right. And I understand.  But as you have preserved the ownership of the property, you have preserved the ownership. Well, I mean, we argued it within the context of both the evidentiary and then down below, because we talked about work. I think we talked about work for hire within the defenses as well. I pointed to language in the brief. And you talk about these evidentiary issues, and I understand. If you win on the evidentiary issues, then presumably we'd have to look and see whether consideration of this additional evidence would ---- is material enough that it would change the result on the ownership issue. But I don't see why you said, well, regardless of the evidentiary issues, I win, that this Court was wrong in granting summary judgment. Well, we talk about on page 40 in footnote 27 about the issue of ownership in the screenplay at that point. And we talk about it repeatedly through the discussion of estoppel as well. Is this the portion of the brief dealing with affirmative defenses? Correct. Okay. And, again, if you win on those, I mean, and then I think you, you know, you have I just don't see where you're taking issue with just the courts of ruling as to ownership. I guess I try to say it by signing it as an error and then discussing it at least inferentially throughout the body of. Okay. We'll hear from the other side. Good morning, Your Honors. This case stands in the same posture as such decisions by this Court as Conigsburg v. Rice, Jackson v. Axton, and Zuhl v. Shanahan if the prevailing defendants in those cases had been the first to file for declaratory relief. The district court's judgment, summary judgment for plaintiff should be affirmed here. I think the district court exhaustively and thoroughly looked at evidentiary issues and then ruled on the merits in two orders, the first on the evidence, 87 pages long, the second on the merits, 69 pages long. And all of the analyses of the district court are correct. I think Judge Kaczynski is correct here that in their opening brief, appellants abandoned their argument that they're legitimate owners of the copyright. There are only a handful of ways that you can become an owner of a copyright. You either have to be an author, the work has to be a work-for-hire by an employee, the work has to be a work-for-hire by a special commission, or there has to be a transfer. And as the district court below found, none of these events occurred. Plainly, Kesey and Irby Smith were independent contractors. They weren't paid a salary. They received no benefits. They did their work in Kesey's home. There was no work-for-hire by special commission, because then you need a writing signed by both sides, and that's the Schiller and Smith case, and it has to use the Schiller or equivalent language. Here you literally have a letter that begins, to whom it may concern. It's a letter of introduction. Nothing more than that. It doesn't remotely meet the requirements of a work-for-hire by special commission writing. Or you could become a copyright owner by transfer, but for essentially the same reasons that the to whom it may concern letter doesn't meet the requirements of a work-for-hire by special commission, it doesn't meet the requirements under 204 as a memorandum of transfer for many of the reasons articulated by Judge Kaczynski in the Kronenberg case. I guess their last argument is that possibly is that they were coauthors, but providing facts or ideas for work does not amount to coauthorship. All those arguments were exhaustively and correctly addressed by the district court. The court's rulings on those issues were not challenged in the opening brief. So those issues are abandoned. So basically the defendants are here in the position of spoilers. They're not coming before this Court having presented colorable or determinable arguments that they are owners of the work. They're only here to say that KZ LLC sued too late. All they're here to do is present their arguments to the statute of limitations, latches, and estoppel. And as the district court found, those arguments fare no better than their ownership arguments. As the Court recognized here, statute of limitations requires a plain and express repudiation. Here there's nothing plain or express except for the fact that in 1994, KZ published the novel. So the only plain and express repudiation that occurred here operated against defendants, not in their favor, which is why I say the case is much like Zuhl v. Shanahan or Jackson v. Axton if the prevailing defendants in those cases had been the first to file for declaratory relief. KZ, as the author, made his determination of his rights as clear as he could. He published the novel, which is virtually identical to the screenplay. I've read them both and I recommend them. And it's undisputed that defendants knew about the publication of the novel. Mr. Crapdell was incorrect as to the record. The letters between counsel in 1994 preceded publication. There were threats not by Sundan and Fletcher or Mr. Crapdell's clients, but there were threats by the Wilson defendants that they would seek an injunction against the publication of the novel. That's what led to the correspondence. At the end of the day, the Attorney Lawrence Rose for KZ, because KZ was still alive at that point, rejected the arguments, correctly rejected the arguments that were being asserted against them, rejected the offer to settle that was proffered by the Wilson defendants. They said, well, you keep the novel, we'll keep the screenplay and maybe we can reach an accommodation. He rejected that and unilaterally published the novel. There could not have been a more plain or express repudiation possible of the rights that are now being asserted. And importantly, the Wilson defendants and Sundan and Fletcher acquiesced in the publication of the novel. In fact, there's testimony in the record we cited in our brief that they decided that strategically or tactically, publication of the novel might be a good thing. I think in their minds, they thought that maybe there would be some way they could do their way into production of a movie if the novel proved to be successful. But obviously, that never happened. Since there's no plain or express repudiation, the statute of limitations never accrued. And for these same reasons, there's no latches. Latches requires an unreasonable delay in filing an action. Well, there's no unreasonable delay here because from 1994 through 2006, a period of 12 years, the novel was being distributed without contest or challenge or controversy. And in fact, the only reason a claim was asserted against the novel in 2006 was as a counterclaim when we filed for declaratory relief. By the way, does the novel have a copyright notice on it? Yeah. The cover says prominently. Well, what's the date of the copyright notice? 1990. It's copyright and then the symbol for copyright, Ken Kesey, 1994. All rights reserved. Okay. Thank you. I think you're out of time. Would you like to take a minute for rebuttal? Judge, I just want to bring to your attention, based on your question, I did mention the work for hire argument also on page 23 of the brief as well. So I just wanted to bring that to the Court's attention. Okay. Thank you. Of the blue brief? Blue brief. Thank you, Your Honor. Thank you. The case is argued. We'll stand smooth.
judges: Kozinski, Tashima, Ikuta